IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-12-1053 |
| AXIS INSURANCE CO., | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

This Memorandum and Order addresses Defendant AXIS Insurance Company's Motion to Dismiss Plaintiff's Complaint, or in the Alternative, Motion for Summary Judgment, ECF No. 35, and supporting memorandum, ECF No. 35-1; Plaintiff Financial Industry Regulatory Authority's Cross-Motion for Summary Judgment, ECF No. 37, and supporting memorandum, ECF No. 37-1; Defendant's Reply and Opposition, ECF No. 38; and Plaintiff's Reply, ECF No. 39. I find that a hearing is unnecessary in this case. *See* Local Rule 105.6. For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Cross-Motion for Summary Judgment is DENIED.

I. **BACKGROUND**

AXIS issued two employment liability insurance policies to the Financial Industry Regulatory Authority ("FINRA"), one covering the period from March 31, 2010 to March 31, 2011 ("2010/2011 Policy"), and the other covering the period from March 31, 2011 to March 31,

2012 ("2011/2012 Policy") (together, the "Policies").[1] Of import, the Insuring Agreements of both Policies state that AXIS will provide coverage for a claim against FINRA, as the Insured, if

> the Claim is first made against the Insureds during the Policy Period or the Extended Reporting Period, if applicable, and reported in writing to the Insurer as soon as practicable after the Director of Human Resources, General Counsel, or Risk Manager of the Policyholder, or the functional equivalent thereof, first becomes aware of such Claim, but in no event later than sixty (60) days after the expiration of the Policy Period or the Extended Reporting Period, if applicable.

Compl. Ex. D & E, Policies § I, ECF Nos. 2-5 – 2-8. The Policies define "claim" as "the receipt by any Insured of . . . a written demand against any Insured for monetary or non-monetary relief[.]"[2] Policies § III.D.1.a.

When FINRA received notice on April 22, 2011 that Hans-Linhard Reich, a former FINRA employee, had filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination against FINRA on March 31, 2011 ("EEOC Proceeding"), FINRA sought AXIS's coverage. AXIS agreed to participate in FINRA's defense, pursuant to the 2011/2012 Policy, but reserved its rights to deny coverage at a later date. Reich then brought an age discrimination suit against FINRA in a United States District Court on August 30, 2011 ("Reich Action"), which ultimately settled.

On February 15, 2012, AXIS denied coverage for the Reich Action on the basis that FINRA failed to make a timely report to AXIS of the "written demand" it received, as required under the 2010/2011 Policy. AXIS identified as the "written demand" a February 3, 2011 email

---

[1] Because, as discussed *infra*, the Court treats Defendant's motion to dismiss as one for summary judgment, and Plaintiff has filed a cross-motion for summary judgment, "'each motion [is] considered individually, and the facts relevant to each [are] viewed in the light most favorable to the non-movant.'" *Lynn v. Monarch Recovery Mgmt., Inc.*, No. WDQ-11-2824, 2013 WL 1247815, at *1 n.5 (D. Md. Mar. 25, 2013) (quoting *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003)).

[2] The parties do not contend that any of the other definitions of "claim" are relevant here.

2

to FINRA's associate vice president and associate general counsel, Gary Lipkin. In the email, Reich's attorney, James Batson, wrote:

> Not to quibble, but just so that we are clear, I did not ask for 5 years of "severance pay." I said that Mr. Reich believed that FINRA's decision to terminate his employment was discriminatory, in that his age was a motivating factor. I added that Mr. Reich would settle that claim for a sum equal to 5 years' pay. You said that you could get him 12 months, but no more than that and that if Mr. Reich chose not to accept that, his last day would be March 31.
> Mr. Reich rejects your counter-offer.

Compl. Ex. H, Feb. 3, 2011 email, ECF No. 2-11. AXIS argued that the 2010/2011 Policy obligated FINRA to report the demand, which FINRA received during the 2010/2011 Policy, within sixty days of the 2010/2011 Policy's expiration. According to AXIS, FINRA submitted a report of the claim on August 9, 2011, and AXIS received it on August 12, 2011, more than sixty days after the 2010/2011 Policy expired.

FINRA contends that the email "was not a 'written demand for monetary or non-monetary relief,'" and therefore not a "claim," but rather "merely a recounting of an *oral* conversation of the day before." Compl. ¶ 17, ECF No. 2. FINRA claims that the email was "intended 'just' to avoid any uncertainty or confusion on [FINRA's general counsel's] part as to what [Reich's attorney] had said in an *oral* conversation regarding the possible resolution of the dispute between Reich and FINRA." *Id.*

FINRA brought suit against AXIS in state court, claiming breach of contract based on AXIS's alleged breach of its duty to indemnify under the Policies, and seeking a declaratory judgment. According to Plaintiff in Count I for "Breach of Contract and Declaratory Judgment Under the 2011/2012 Policy," FINRA received notice of the EEOC Proceeding and notified AXIS of the "claim" within the 2011/2012 Policy. Alternatively, in Count II for "Breach of Contract and Declaratory Judgment Under the 2010/2011 Policy," Plaintiff contends that, if it

3

received notice of the EEOC Proceeding within the 2010/2011 Policy, then its delay in notifying AXIS "was de minimis and did not result in actual prejudice to AXIS, as is required under MD Code, Insurance § 19-110." Compl. ¶ 30. AXIS removed the action to this Court and now moves to dismiss or for summary judgment, and FINRA has filed a cross-motion for summary judgment.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the

complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011). However, if the Court considers matters outside the pleadings, as the Court does here, the Court must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Grp., Inc.*, No. RDB-12-318, 2013 WL 139194, at *2 (D. Md. Jan. 10, 2013).

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, No. 12-1722, --- F.3d ---, 2013 WL 1866940, at *3 (4th Cir. May 6, 2013). When considering cross-motions for summary judgment, the court must consider "each motion . . . individually" and view "the facts relevant to each . . . in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a

"scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

## III. DISCUSSION

### A. Count I: 2011/2012 Policy

Pursuant to the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Proc. §§ 3-401 – 3-415, "[a]ny person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract, . . . and obtain a declaration of rights, status, or other legal relations under it."[3] *Id*. § 3-406. Additionally, a breach of contract is "a failure without legal excuse to perform any promise which forms the whole or part of a contract . . . ." *In re Ashby Enters., Ltd.*, 250 B.R. 69, 72 (Bankr. D. Md. 2000) (quoting *Conn. Pizza, Inc. v. Bell Atl.-Wash., D.C., Inc*., 193 B.R. 217, 225 (Bankr. D. Md. 1996) (quoting *Weiss v. Sheet Metal Fabricators, Inc*., 110 A.2d 671, 675 (Md. 1955)) (quotation marks omitted)). For Count I, the issue is whether Reich first made his claim during the 2011/2012 Policy, such that AXIS's denial of coverage was a breach of the contract, or whether Reich made his claim in the February 3, 2011 email, such that the 2011/2012 Policy did not obligate AXIS to provide coverage.

---

[3]"In an action based upon diversity of citizenship, the relevant state law controls. The district court must apply the law of the forum state, including its choice of law rules." *Limbach Co. LLC v. Zurich Am. Ins. Co.*, 396 U.S. 358, 361 (4th Cir. 2005) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). As both parties cite Maryland law, notwithstanding the fact that Defendant reserves—but has not exercised—the right to contest its applicability, Pl.'s Cross-Mot. 13 n.3; Def.'s Mot. 14 n.2, the Court assumes that Maryland law applies.

When construing an unambiguous contract, "courts focus on the four corners of the agreement[,] and ascribe to the contract's language its customary, ordinary, and accepted meaning." *Dynacorp Ltd. v. Aramtel Ltd.*, 56 A.3d 631, 670 (Md. Ct. Spec. App. 2012) (citations and quotation marks omitted); *see 100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 23 (Md. 2013). In these circumstances, the contract's construction is "an issue of law for resolution by the trial judge." *Bd. of Educ. of Charles Cnty. v. Plymouth Rubber Co.*, 569 A.2d 1288, 1296 (Md. Ct. Spec. App. 1990); *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 489 (Md. 1985). However, "when there is a *bona fide* ambiguity in the contract's language or legitimate doubt as to its application under the circumstances . . . the contract [is] submitted to the trier of the fact for interpretation." *Id.* Nonetheless, "[t]he court may construe an ambiguous contract if there is no factual dispute in the evidence." *Pacific Indem. Co.*, 488 A.2d at 489. Contract language is ambiguous "if, to a reasonably prudent person, the language used is susceptible of more than one meaning and not when one of the parties disagrees as to the meaning of the subject language." *Id.*

Defendant argues that the term "claim," as used in the Policies, encompasses the February 3, 2011 email because the email is "a writing" and "a demand for monetary relief," in that it "proposes a settlement of Mr. Reich's age discrimination claim against FINRA 'for a sum equal to 5 years' pay.'" Def.'s Mem. 9. Plaintiff counters that the email is not a "claim" because it is a clarification of a prior conversation, not a demand, or at the very least, not "clearly intended to assert a demand." Pl.'s Mem. 18. Plaintiff adds that even if there were a demand, it was made orally before the email, such that it was an oral, not written, demand, and a past, not present demand. Pl.'s Mem. 14 & 22–23. In Plaintiff's view, the email also could not be a claim

7

under the Policies because it is not formal and does not contain the "necessary components of a demand letter." *Id*. at 23 & 24.

A reasonably prudent person could not read the Policies and conclude that "claim" did not encompass written correspondence stating an amount for which an individual would settle a claim or, more specifically, that the February 3, 2011 email was anything other than a claim. To begin with, "'[c]ourts have found that the term 'claim' as used in liability insurance policies is unambiguous.'" *Schlather, Stumbar, Parks & Salk, LLP v. One Beacon Ins. Co.*, No. 5:10-cv-0167, 2011 WL 6756971, at *5 (N.D.N.Y. Dec. 22, 2011) (quoting *Home Ins. Co. of Ill. v. Spectrum Info. Tech., Inc.*, 930 F. Supp. 825, 846 (E.D.N.Y. 1996)). Moreover, the Fourth Circuit stated that there was "no ambiguity" in an insurance policy that defined "claim" as "'a written demand for monetary or non-monetary relief.'" *SNL Fin., LC v. Phila. Indem. Ins. Co.*, 455 Fed. App'x 363, 368 (4th Cir. 2011). Therefore, the meaning of "claim" as it pertains to the February 3, 2011 email is unambiguous and is an issue of law for this Court to resolve. *See Bd. of Educ. of Charles Cnty.*, 569 A.2d at 1296.

As noted, the relevant definition of "claim" under the Policies is "a written demand against any Insured for monetary or non-monetary relief[.]" Policies § III.D.1.a. The parties do not dispute that Reich's counsel sent the email to FINRA's general counsel, and that FINRA is insured by AXIS, such that any claim stated is "against [the] Insured." Further, it cannot be disputed that the February 3, 2011 email is a writing. It is true that, as FINRA argues, "the 'written demand' requirement . . . cannot be satisfied by an oral communication." Pl.'s Mem. 15. Indeed, AXIS does not dispute this contention. Def.'s Reply 6. Yet, AXIS correctly asserts that "[t]he fact that the claimant initially made an oral demand does not deprive the subsequent written demand of its written nature." *Id.*

8

Although Plaintiff argues that the email is not a demand, the term "demand" in the Policies certainly encompasses the circumstances presented in the email. Neither this Court nor the Maryland appellate courts have construed "demand" in the artificially restricted context urged by Plaintiff. Accordingly, I will consider the case law in other districts. In construing the same language, albeit ordered differently ("a written demand for monetary or nonmonetary relief made against any Insured"), the United States District Court for the Northern District of Illinois stated that "'demand for 'relief' is a broad enough term to include a demand for something due." *Minuteman Int'l, Inc. v. Great Am. Ins. Co.*, No. 03 C 6067, 2004 WL 603482, at *3 & 7 (N.D. Ill. Mar. 22, 2004); *see Agilis Ben. Servs. LLC v. Travelers Cas. & Sur. Co. of Am.*, No. 5:08-CV-213, 2010 WL 8573372, at *6 (E.D. Tex. Apr. 30, 2010) (same). Here, Reich's counsel stated in the email that, in his prior conversation with FINRA's general counsel, he "said that Mr. Reich believed that FINRA's decision to terminate his employment was discriminatory" and "added that Mr. Reich would settle that claim for a sum equal to 5 years' pay." Feb. 3, 2011 email. It is clear that Reich, through counsel, was asserting a legal claim for employment discrimination and demanding money in an amount equal to his salary for five years to settle that claim. *See id*. Any other reading of the email is fanciful. The email is a demand not for an amorphous "something due" but specifically for a monetary payment of a specifically requested amount. *Cf. Minuteman*, 2004 WL 603482, at *7. It is of no moment that the email clarifies a prior oral demand, as it still states the demand, and it manifests the demand in written format.

Moreover, contrary to Plaintiff's assertion, it is abundantly clear that the email is "intended to assert a demand." *See* Pl.'s Mem. 18. Indeed, Reich's counsel clarifies that he was not seeking "'severance pay'" on behalf of his client, but rather a specific "sum equal to 5 years' pay" to settle a claim. *See* Fed. 3, 2011 email. Further, the email is not a "past demand," but

9

rather a reiteration of a demand that had been made and which Reich's attorney sought to clarify, lest FINRA's general counsel misinterpret it as part of a severance package negotiation.

Nor do the cases Plaintiff cites support its position. For example, in *Klein v. Fidelity & Deposit Co. of America*, 700 A.2d 262, 271 (Md. Ct. Spec. App. 1997), the court concluded that three letters were not claims, but those letters only "warn[ed] that claims were likely to be filed" and "fail[ed] to make a 'demand.'" Similarly, in *Florida Department of Financial Services v. National Union Fire Insurance Co. of Pittsburgh, PA*, No. 4:11cv242/RS–WCS, 2012 WL 760606 (N.D. Fla. Mar. 7, 2012), the court concluded that the letter at issue was not a demand because it only "announce[d] an 'intention to assert claims,'" without making a "present demand for any action." Unlike the letters in those two cases, the February 3, 2011 email does not refer to an intent to assert claims, but rather actually demands a sum of money to settle Reich's claim. Also, the email refers to an ongoing, unresolved issue regarding Reich's termination and seeks money to settle that issue, unlike in *Alethia Research & Management, Inc. v. Houston Casualty Co.*, 831 F. Supp. 2d 1210, 1218 (C.D. Cal. 2011), where the court concluded that a "'courtesy copy' of [a] Summons with Notice" in an action that had been dismissed voluntarily was not a claim because "it was no longer a demand," as the action was no longer pending. In *SNL Financial*, 455 Fed. App'x 363, in which a former employee's attorney sent two letters to the insured, seeking to discuss "issues" regarding the employee's termination, and a third party told the insured that he had read an unsigned draft complaint by the former employee, the court concluded that there was no written demand. Again, the case before this Court is different because the email seeks money, not a conversation, and FINRA's counsel received it directly from Reich's counsel, rather than catching wind of it from a third party.

FINRA also argues that the email cannot be a claim because it pertains to severance payments, which are excluded from the Policies' definition of loss, such that a threat of litigation pertaining to severance payments would not trigger AXIS's duty to indemnify. Pl.'s Mem. 19. FINRA maintains that AXIS's general counsel testified that "[t]he Email was part of a severance package negotiation." *Id.* at 27. In FINRA's view, *Klein*, 700 A.2d at 276 n.8, is on point because there, the court noted that the letters at issue could not be claims because they could be based on activity that was excluded from coverage. *Id.* at 19. AXIS counters that the February 3, 2011 email "makes it clear that Mr. Reich was not demanding severance pay or to negotiate his severance. It says so expressly. Rather, the . . . E-mail demands monetary relief for the age discrimination that Mr. Reich allegedly suffered." Def.'s Reply 7. Additionally, AXIS insists that its general counsel's "subjective belief as to whether or not he was negotiating a run of the mill severance is irrelevant to the question of whether a claim has been made." *Id.* at 8.

It is true that FINRA's general counsel testified that he viewed the February 3, 2011 email as "nothing more than part of the back and forth of a standard severance negotiation." Lipkin Aff. ¶ 10, ECF No. 37-3. Lipkin recalled that, "[o]n February 2, 2011, [he] discussed Mr. Reich's severance package with his attorney, James A. Batson, in a telephone call." *Id.* ¶ 4. Lipkin explained that "almost half of FINRA's employees involved in severance negotiations hire lawyers to negotiate their severance packages for them," but "only a small percentage actually sue FINRA." *Id*. ¶ 5. In his view, Batson's reference to employment discrimination by phone and again by email "did not suggest that Mr. Reich would sue FINRA," but rather was typical for severance package negotiations. *Id.* ¶ 6. Lipkin said that Batson followed up with an email stating his "understanding of the oral conversation regarding Mr. Reich's severance package." *Id.* ¶ 9. Yet, even if true, this testimony does not establish that the February 3, 2011

11

email was not a demand. Rather, it shows that Reich's attorney wrote the email to restate and clarify a demand that he made orally the day before and to ensure that FINRA's general counsel understood that he had made a demand and not simply tried to negotiate a severance package. Indeed, Reich's attorney had good reason for sending this email, as Lipkin's testimony demonstrates that he misunderstood the demand.

In Plaintiff's view, the email also could not be a claim under the Policies because it is not formal and "[i]t sets no deadline and makes no threat of legal action of any kind." Pl.'s Mem. 23. Plaintiff cites *LensCrafters, Inc. v. Liberty Mutual Fire Insurance Co.*, No. C 04-1001 SBA, 2005 WL 146896 (N.D. Cal. Jan. 20, 2005), but *LensCrafters* is inapposite and, in any event, is not binding on this Court. There, the purported written demand on LensCrafters as the insured under a policy with Liberty Mutual was "not even addressed to LensCrafters" and did "not demand that corrective action be taken by LensCrafters." *Id.* at *6. Rather, the optometrists who wrote the letter directed it at the California Board of Optometry and the California Department of Managed Health Care and requested "assistance in advising [the optometrists] how to proceed, or in instructing [LensCrafters] to modify [certain] policies." *Id.* Here, it is undisputed that Reich's attorney directed the February 3, 2011 email at FINRA, through its general counsel. Moreover, the *LensCrafters* court was construing a policy with a different definition of "claim" when it concluded that "claim" required "a formal demand for money or service." *Id.* at *7. In any event, the court's use of "formal" simply "exclude[d] mere requests for explanations, complaining or lodging of a grievance," while relying on a California state court conclusion that a "'formal lawsuit'" was not required. *Id.* (quoting *Abifadel v. Cigna Ins. Co.*, 9 Cal. Rptr. 2d 910 (Cal. Ct. App. 1992)). Likewise, in *Stout v. Gullf Underwriters Ins. Co.*, 326 Fed. App'x 435 (9th Cir. 2009), a three-paragraph opinion that also is not controlling authority, the Ninth

12

Circuit stated that a request for payments "expressly excluded from the definition of "'Damages'" did not qualify as "a formal 'demand or assertion of a legal right seeking **Damages**,'" but the court neither explained what would qualify as "a formal 'demand'" or why it concluded that the policy required that the demand be "formal." *Id*. at 435-36. The February 3, 2011 email could be considered "formal" under the *LensCrafters* criteria, and *Stout* does not suggest otherwise.

In *St. Paul Mercury Insurance Co. v. RMG Capital Corp.*, No. SACV 12-450-JST, 2012 WL 2069677, at *2 (C.D. Cal. June 7, 2012), another case from outside the Fourth Circuit, the insured received a letter that stated that CWS, which had entered into a contract with the insured, "'demand[ed] that the [insured] immediately confirm in writing that it will fund the remainder of the construction loan, as required pursuant to the terms of the [contract].'" The insurance policy defined "claim" as "a written demand against any Insured for monetary damages or non-monetary relief." *Id*. The federal court observed that California courts define "demand" as "'a request for something under an assertion of right or an insistence on some course of action," and something more than "'[a] mere request for an explanation, expression of dissatisfaction, or lodging of a grievance that falls short of such an insistence.'" *Id*. at *3 (citation omitted). It also stated that a demand "for 'non-monetary relief'" under the policy had to suggest "entitlement to, or threat to seek, court-ordered relief." *Id*. at *4–5. On that basis, the court concluded that the letter was not a demand for non-monetary relief, and therefore not a claim, because "it sought only return correspondence clarifying whether [the insured] agreed with CWS's interpretation of the [contract]." *Id*. at *4. Here, in contrast, not only does Reich's attorney seek, through the email, more than correspondence ("a sum equal to five years' pay"), but also he makes clear that a lawsuit is a possibility. He states that, for the amount demanded, "Mr. Reich would settle [his]

claim" that "FINRA's decision to terminate his employment was discriminatory, in that his age was a motivating factor." Feb. 3, 2011 email. The corollary is that, if FINRA did not pay the amount demanded, Mr. Reich's legal claim against FINRA would move forward.

Alternatively, FINRA contends that "the phrase 'written demand' is ambiguous" and the Court must construe it "in favor of the insured, FINRA." Pl.'s Mem. 17. It is true that in Maryland, courts construe ambiguous language in insurance contracts "against the insurer as the drafter of the instrument,'" if they cannot ascertain the meaning through extrinsic or parol evidence. *Sullins v. Allstate Ins. Co.*, 667 A.2d 617, 619 (Md. 1995) (quoting *Cheney v. Bell Nat'l Life*, 556 A.2d 1135, 1140 (1989)). However, as discussed, the language at issue simply is not ambiguous.

For all these reasons, I conclude, as a matter of law, that the February 3, 2011 email is a "claim" as the term is used in the Policies. *See Bd. of Educ. of Charles Cnty.*, 569 A.2d at 1296. Further, the material facts are undisputed: The email is from February 3, 2011, and the 2011/2012 Policy provided coverage for claims made between March 31, 2011 and March 31, 2012. Therefore, the claim was not made during the period covered by the 2011/2012 Policy. Thus, AXIS "is entitled to judgment as a matter of law" that AXIS's denial of coverage was not a breach of the 2011/2012 Policy. Fed. R. Civ. P. 56(a). AXIS's motion for summary judgment as to Count I of Plaintiff's Complaint, Breach of Contract and Declaratory Judgment Under the 2011/2012 Policy, is GRANTED. Conversely, FINRA is not "entitled to judgment as a matter of law," and FINRA's cross-motion for summary judgment as to Count I is DENIED.

### B. Count II: 2010/2011 Policy

The undisputed facts with regard to Count II for Breach of Contract and Declaratory Judgment Under the 2010/2011 Policy are that the email, which I have concluded is a claim, is

from February 3, 2011; the Insuring Agreement of the 2010/2011 Policy required the insured to report claims made during the Policy period no later than sixty days after the expiration of the Policy on March 31, 2011; FINRA did not report the claim until August 2011; and AXIS denied coverage without showing that it was prejudiced by the delay. Whether AXIS's denial of coverage when FINRA failed to report the claim within the period indicated in the 2010/2011 Policy was a breach of the 2010/2011 Policy turns on whether Maryland's notice-prejudice statute, Md. Code Ann., Ins. § 19-110, required AXIS to show prejudice when denying coverage on the basis of untimely notice. Defendant asserts that "§ 19-110 does not apply to a denial of coverage based on a failure to trigger the Insuring Agreement of the policy," and in this case, "the 10/11 Policy's Insuring Agreement was not triggered" because "a condition precedent to coverage under the Insuring Agreement did not occur, i.e., the reporting of a Claim to AXIS no later than sixty days after the expiration of the Policy Period." Def.'s Mem. 14. Plaintiff contends that the statute applies to the 2010/2011 Policy because there is no meaningful distinction between "a late notice situation" and "'the non-occurrence of a condition precedent to coverage,'" given that "the AXIS policies expressly state that the notice requirement under the 'Awareness Provision' in its policy is a 'condition precedent' to coverage."[4] Pl.'s Mem. 28-29.

---

[4] The "Awareness Provision" provides:

    A. If during the Policy Period any Insured becomes aware of a Potential Claim, and the Insured gives written notice of such Potential Claim to the Insurer during the Policy Period, then any Claim subsequently arising from such Potential Claim shall be considered to have been made during the Policy Period in which the Potential Claim was first reported to the Insurer. No coverage shall be provided for fees and expenses incurred prior to the time such circumstances result in a Claim.
    B. The Insured shall, as a condition precedent to exercising their rights hereunder:
        1. include with any notice of Potential Claim a description of the circumstances, the nature of the potential Wrongful Act, the nature and extent of the potential damages, the names of the potential claimants, the identities of the potential

Ins. § 19-110 provides:

> An insurer may disclaim coverage on a liability insurance policy on the ground that *the insured . . . has breached the policy* by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.

Thus, the notice requirement of Ins. § 19-110 only applies when "the insured . . . has breached the policy." *See id.*; *Sherwood*, 13 A.3d at 1286. Whether an insured's failure to report a claim is a breach of an insurance policy, to trigger application of § 19-110, depends on whether the policy is a "claims-made" policy or a "claims-made-and-reported" policy. A claims-made policy is one in which "a claim must be made against the insured during the policy period, but need only be reported to the insurer 'promptly,' or 'as soon as practicable,' but not necessarily during the policy period." *Sherwood*, 13 A.3d at 1282 (citation and quotation marks omitted). A claims-made and reported policy is one in which the claim must be "both be made against the insured and reported to the insurer during the policy period, or any extended reporting period." *Id.* (citation and quotation marks omitted).

The parties agree that the 2010/2011 Policy is a claims-made-and-reported policy. Def.'s Mem. 16; Pl.'s Mem. 30. Yet, relying on the same case, *Sherwood Brands, Inc. v. Great Am. Ins. Co.*, 13 A.3d 1268 (Md. 2011), they reach different conclusions about whether FINRA's failure to report timely Reich's claim to AXIS was a breach of its claims-made-and-reported policy. The crux of their disagreement is what type of policy was at issue in *Sherwood*: In

---

defendants, and the manner in which the Insured first became aware of such circumstances; and
2. give the Insurer such additional information and cooperation as it may reasonably require.
C. Written notice of any such subsequent Claim resulting from a Potential Claim must be given to the Insurer as soon as practicable, but in no event later than sixty (60) days after such Claim is first made.

AXIS's view, it was a claims-made policy, while FINRA insists that it was a claims-made-and-reported policy, like the 2010/2011 Policy. Def.'s Mem. 16; Pl.'s Mem. 30. FINRA argues that the *Sherwood* court held that the showing of prejudice requirement of Ins. § 19-110 applies to claims-made-and-reported policies, Pl.'s Mem. 30, whereas AXIS contends that "the court noted that . . . § 19-110's provisions do not apply to claims-made-and-reported policies," Def.'s Mem. 17.

A review of *Sherwood* is in order. There, Sherwood had an insurance policy covering from May 1, 2007 to May 1, 2008. 13 A.3d at 1270. The policy's insuring agreement stated that the insurer would cover the insured's obligations under any "'Claim . . .first made against the Insured Persons during the Policy Period.'" *Id.* Its notice requirement stated that written notice was "'a condition precedent to the[] [insured's] rights under this Policy." *Id.* at 1271. Claims were filed against Sherwood during the policy period, but Sherwood did not notify its insurer until October and November, 2008, after the policy period ended; and the insurer denied coverage. *Id.* at 1271–72. Sherwood filed suit, and the circuit court granted the insurer's summary judgment motion, holding that the insurer properly denied coverage because Sherwood did not notify the insurer of the claims against it by the policy deadline. *Id.* at 1270. The circuit court found that the policy was a claims-made-and-reported policy, such that Ins. § 19-110 did not apply, and therefore there was no need for the insurer, when denying coverage, to show that it was prejudiced by its insured's delay in reporting the claim. *Id.* at 1273. Sherwood appealed, and the Court of Appeals vacated the circuit court's judgment, holding that it was a claims-made policy that the insured had breached, such that Ins. § 19-110 applied and the insurer had to demonstrate prejudice from Sherwood's delay. *Id.* at 1270 & 1287.

The Court of Appeals observed that "19-110 mandates that the notice provisions of [insurance policies] be treated as covenants, not conditions," even when they are labeled as conditions precedent. *Id.* at 1287. On a claims-made policy, the true "condition precedent" is the claim made against the insured during the policy period. *Id.* at 1288. That claim triggers coverage, and if the insured then fails to report the claim, that is a breach of contract, regardless of the language used in the policy's notice provision. *Id*. Thus, when a claim is made against an insured on a claims-made policy during the policy period, the insured's late reporting of that claim is a breach of contract, and Ins. § 19-110 applies, such that the insurer must show prejudice if it denies coverage based on the insured's breach. *Id.*

Significantly, the court also held that "§ 19–110 does not apply . . . to claims-made policies in which the act triggering coverage—usually notice of a claim or suit being filed against and served upon an insured under third-party liability policies—does not occur until after the expiration of the liability policy, as this non-occurrence of the condition precedent to coverage is not a 'breach of the policy,' as required by the statute." *Id*. Moreover, the court noted, albeit in *dicta*, with regard to claims-made-and-reported policies:

> Nationwide, courts' holdings regarding the applicability of notice-prejudice rules to claims-made-and-reported policies have been uniform; "[i]n those jurisdictions that have examined the distinction between claims-made and claims-made-and-reported policies, the courts have uniformly relieved the insurers from any requirement to prove prejudice under the latter form of coverage." 3 *New Appleman on Insurance*, *supra* § 20.01[7][b]. Applying Maryland law, the federal Fourth Circuit Court of Appeals and the United States District Court for the District of Maryland—relying on *T.H.E.[ Ins. Co. v. P.T.P. Inc.*, 628 A.2d 223, 223 (Md. 1993)]—held that **§ 19–110's provisions do not apply to claims-made-and-report[ed] policies**. *See Janjer Enters., Inc. v. Executive Risk Indem., Inc.*, 97 Fed. Appx. 410, 414 (4th Cir. 2004) ("Maryland courts have held that 'claims made and report[ed]' policies ... are not subject to its prejudice requirement."); *Maynard v. Westport Ins. Corp.*, 208 F. Supp. 2d 568, 574 (D. Md. 2002) (quoting *The Rouse Co. v. Fed. Ins. Co.*, 991 F. Supp. 460, 465 (D. Md. 1998)) ("Section 19–110, however, only applies to true 'claims

made' policies. 'Under Maryland law, the "actual prejudice" requirement of § 19–110 does not apply to a "claims made plus report[ed]" policy....' ").

*Id*. at 1282–83 (emphasis added).

Here, as noted, it is undisputed that the 2010/2011 Policy is a claims-made-and-reported policy. Therefore, Ins. § 19-110 does not apply. *Sherwood*, 13 A.3d at 1282-83; *Janjer Enters.*, 97 Fed. App'x at 414; *Maynard*, 208 F. Supp. at 465. Moreover, FINRA did not report the claim to AXIS during the period indicated in the Policy. Consequently, the triggering event never occurred during the Policy Period to obligate AXIS to provide coverage. Further, FINRA's delayed notice was not a breach of the policy because the policy already had ended.

> [W]hen the . . . policy at issue here expired there was nothing left. The policy could not be breached because there was no longer a policy to be breached. Any claim made after its expiration is of the same effect as an accident or event which occurs after the "expiration" of an occurrence policy. There was no breach; there was simply no coverage.

*St. Paul Fire & Marine Ins., Co. v. House*, 554 A.2d 404, 418 (1989) (Murphy, C.J., dissenting). Therefore, Ins. § 19-110 is inapplicable, and AXIS was not required to show prejudice. *Sherwood*, 13 A.3d at 1282–83, 1288. As a matter of law, AXIS's denial of coverage without a showing of prejudice was not a breach of the 2010/2011 Policy. Fed. R. Civ. P. 56(a). AXIS's motion for summary judgment as to Count II of Plaintiff's Complaint, Breach of Contract and Declaratory Judgment Under the 2010/2011 Policy, is GRANTED. For the same reason, FINRA is not "entitled to judgment as a matter of law" on Count II, and FINRA's cross-motion for summary judgment as to Count II is DENIED. *Id.*

## V. CONCLUSION

In sum, AXIS's Motion for Summary Judgment is GRANTED, and FINRA's Cross-Motion for Summary Judgment is DENIED. A separate order shall issue.

Dated: June 12, 2013 	/S/
	Paul W. Grimm
	United States District Judge

lyb